**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**OLIVER ORTOLANI,**

Plaintiff,

v.

**COMMUNITY OF JESUS, INC., ARTS EMPOWERING LIFE, INC., PERFORMING ARTS BUILDING FOUNDATION, INC.,**

Defendants.

Civil Case No.: 1:25-cv-12005-LTS

*– consolidated with –*

**THE COMMUNITY OF JESUS, INC., ARTS EMPOWERING LIFE, INC., and PERFORMING ARTS BUILDING FOUNDATION, INC.,**

Plaintiffs,

v.

**DAVID ORTOLANI and ELLEN ORTOLANI,**

Defendants.

Civil Case No.: 1:25-cv-13453-LTS

**THE CHARITABLE ORGANIZATIONS' REQUEST FOR AN ORDER PROVIDING FOR A DISCOVERY PLAN PURSUANT TO RULE 26**

Defendants in Case No. 1:25-cv-12005-LTS and Plaintiffs in Case No. 1:25-cv-13453-LTS in these two consolidated cases (collectively "the Charitable Organizations") respectfully request that the Court issue the Order that they have attached hereto as Exhibit 1 (the "Proposed Order"), providing for the same total deposition time that they would be entitled to were these consolidated cases treated independently, in a manner that permits them to (1) defend themselves against the

allegations asserted against them in the first case by Oliver Ortolani ("Oliver") – allegations that they submit are not only wholly baseless but egregiously so – and (2) proceed in the second case in a fashion adequate to protect their rights against those individuals who are responsible for the activity that Oliver claims constituted "trafficking": his own parents. The Proposed Order requested by the Charitable Organizations is functionally the same as though these cases were not consolidated. Indeed, the Proposed Order that the Charitable Organizations request provides a lopsided advantage to Oliver and his parents, obviously aligned with one another, who will have twice as much opportunity to examine deposition witnesses that they deem appropriate as will the Charitable Organizations, and without any time limitations for any particular deponent. Under the Order requested by the Charitable Organizations, each of the three "sides" – Oliver, the Charitable Organizations and Ellen and David Ortolani, the parties in the two cases – would have the exact same amount of time to examine witnesses pretrial as they would were these cases treated as two independent cases, effectively meaning that Oliver and his parents will have in the aggregate twice the time allotted to the Charitable Organizations to examine deponents.

Pursuant to Local Rule 26.1(c), under the "presumptive rule" for a single case, each "side" has the right to take ten (10) depositions, which effectively translates to seven (7) hours per deposition, or seventy (70) hours. In these two consolidated cases before the Court, there are over 100 witnesses that have already been collectively identified in the parties' Initial Disclosures, with additional witnesses or potential witnesses already identified in such limited documents as have been exchanged at present. Given the number of potential witnesses, the Proposed Order provides the parties with greater flexibility by permitting each party to allocate its available deposition hours among the witnesses it deems appropriate, rather than limiting each party to ten depositions.

Oliver has requested in his Rule 34 Requests that the Charitable Organizations produce documents in their possession, custody or control going back to 2005 – which is two years before

he was even born. He has served non-party subpoenas to individuals that also call for documents going back to 2005. Obviously, such requests are hopelessly overbroad. With that said, just by way of limited example, e-mail boxes that David and Ellen Ortolani were believed to be using while they were respectively working for the General Contractor and the Architect on the project alone contain over 150,000 emails and attachments that they sent or received from the time period of January 1, 2020 through December 30, 2023.[1] And, this is not taking into account other e-mail accounts that the Ortolani Parents have used during the relevant time frame. See Affidavit of Daniela Lima, attached hereto as Exhibit 2. This is a fact highly germane – though far from the only one – to the Charitable Organizations' present request.

The issue of ensuring that the Charitable Organizations have a fair opportunity to examine the parties in these cases – Oliver, Ellen and David Ortolani – was flagged by the Charitable Organizations for the Court in their submission to the Court in July, and again at the July 24th Zoom initial conference with the Court. See Doc. No. 47 at 4. As the Charitable Organizations stated at the time, by way of illustrating the scope of the three parties' knowledge of the facts material to these two consolidated cases and the need for the Charitable Organizations to have adequate time to examine the parties under oath, Ellen Ortolani formally helped manage the project on behalf of the General Contractor and the Architect. She administered the very volunteer effort that her son claims constitutes "trafficking." She was the Safety Officer for the project, developing and overseeing the Safety Plan for the site, and everyone's compliance with it – contractors, subcontractors and volunteers alike. She organized and spearheaded the very homeschooling program on the site that was formally approved by the Nauset Regional District (which her son

[1] This is used for illustration purposes only. Given the sheer quantity of the documents, and considering relevance and proportionality, the Charitable Organizations will be applying search terms to these mailboxes.

alleges constituted "trafficking"). She organized the circulation of the indemnification agreements that she asked volunteers to sign in order for them or for their children to participate in the project. She fundraised for the project and praised it fulsomely, publicly and otherwise. She was Oliver's parent, and enrolled him in the program at issue in these cases, and saw him (and his brothers) every day, and was centrally responsible for his upbringing, including his medical treatment for conditions that long predated his activities at the site. She personally spent hundreds of hours at the site. Along with her husband, David, she has the most knowledge of Oliver's medical and psychological history, and the reasons they wanted Oliver to participate in the activities on the site, and of the absence of merit – to be blunt – of what their son has alleged, or what has been alleged on his behalf.[2]

Similarly, David Ortolani, who worked for the General Contractor on the project and was a foreman on the site of the performing arts center, also spent hundreds of hours there, including supervising the students (including his sons) in connection with the approved homeschooling program that focused on the site for the 2019-2020 school year, as approved by the Nauset Regional School District. He was part of a core group of parents who organized the approved homeschooling program at the site, supervised it, carpooled the students to and from the site on the days they were there, lived with Oliver (along with Ellen), took Oliver to other activities and took him to medical providers in connection with the extensive pre-existing conditions of various kinds that Oliver had that predated and could not have been caused by the activities at the site. Such medical records that have been obtained reflect that David usually accompanied Oliver to his

---

[2] For instance, there are hundreds of pages of medical records that certain of Oliver's medical providers have produced from Oliver's childhood which show a series of medical conditions that predate activities complained of in this case and have nothing to do with those activities, but for which Oliver blames the Charitable Organizations. Ellen and David Ortolani accompanied their son to these providers and were present during the examinations and know the facts. They are the ones whose testimony the Charitable Organizations require in order to defend themselves not only against the substance of the allegations, but against the allegations that the Charitable Organizations have caused their son "damage."

medical appointments. Oliver has for many years worked for and with David in the latter's contracting business, making David well-positioned – and perhaps best positioned – to provide testimony about his son's physical and mental condition. See, e.g., Oliver Ortolani's CV ("Trade Experience: Worked on commercial job sites from age 11 to 17"), attached hereto as Exhibit 3.

As for Oliver himself, he has filed a 30-page complaint setting forth 111 factual allegations, which the Court itself characterized as "light on factual details." See Doc. No. 37 at 11 (June 26, 2026 Memorandum and Order) at p. 11. Indeed, his Complaint does not actually identify a single person who actually did the things he alleges occurred, requiring the Charitable Organizations to engage in discovery from him in order to test these quite severe allegations and defend themselves.

It is not overstating things to observe that Oliver is a strategic, purposeful young man. Asked by a filmmaker with whom he is working on the subject matter of this case whether he intends to settle this case or go to trial, he replied "I think I'd prefer a trial *(sic)* it will hurt them a lot more and benefit me a lot more as well." See Exhibit 4. Emailing five weeks before he filed this lawsuit about his desire to fund a capital investment with which to start a business, he introduced himself by saying "I am an 18 year old entrepreneur." See Exhibit 5. He had contacted the owner of mobile homes a few weeks earlier stating that he was interested in buying "several" mobile homes, a venture which would have required a substantial amount of money that he appears to have hoped to be receiving from this case. See Exhibit 6.

Having filed gravely damaging allegations that he clearly expected (and hoped) would inflict severe damage to the Charitable Organizations, and having decided to file this lawsuit fully chargeable with the knowledge of the gravity of what he was alleging (and what the actual facts are), Oliver should not be permitted to block the Charitable Organizations from defending themselves. Put as simply as it can be put, the Charitable Organizations are entitled to defend themselves by asking Oliver – and each of his parents – questions about these most serious

allegations, and to do so precisely and comprehensively, including by utilizing the emails and texts they have written directly contradicting their son's allegations.

Seven hours of deposition is not, to put it mildly, nearly enough time for the depositions of either Ellen or David Ortolani – not enough to ask them about the emails and the texts they authored undermining their son's allegations and not enough to examine them about the actual facts. And it is not enough time to ask Oliver Ortolani to back up the 111 or so factual allegations he has made.

Predictably, Oliver Ortolani and Ellen and David Ortolani vehemently oppose anything more than a single day of deposition for each of them, and they want it done by Zoom, in both cases so as to be shielded from adequate examination under oath. Why that is is not mysterious: it is to avoid meaningful examination – in the case of Oliver Ortolani about the allegations he has made, and in the case of Ellen and David Ortolani, to avoid examination both about Oliver's allegations and on the voluminous emails and texts written by them eviscerating those allegations, and establishing their own liability. Predictably, the Ortolanis characterize the Charitable Organizations' efforts to simply defend themselves by having enough time to ask the parties to these two cases questions under oath as "scorched earth tactics." It is nothing of the sort. Quite to the contrary, it is Oliver and his parents who are feverishly attempting to ensure that the Charitable Organizations do not have adequate time to examine them under oath because it is in the interest of Oliver and his parents that that time be sharply limited.

Accordingly, the Charitable Organizations request the following, which is functionally the same as though these were simply treated as two cases, in an Order:

1. That all sides be granted the exact same in number of deposition hours that they would be entitled to were those treated as two separate cases: 140 hours (10 depositions multiplied by 7 hours multiplied by two cases), with the right to use that time for direct examination of

witnesses as they see fit, but limiting the Charitable Organizations to no more than 21 hours each for each of the three parties: Oliver, Ellen and David Ortolani.

2. That Oliver, and his parents, who are obviously aligned, would each have 140 hours of deposition time as they see fit, that is, with Oliver getting 140 hours, and his parents getting another 140 hours, with no limitations on them for how they want to use the time for any witness of their choosing.

3. That the depositions of Oliver, Ellen and David take place in Boston, where Oliver filed this lawsuit, and where Ellen and David each has family members (including one of their sons) who live nearby, and that the deposition would take place not virtually but in person.

4. That the time limitations would apply to direct testimony, not cross-examination, and would count actual testimony, not breaks.

5. That the limitations on interrogatories, requests for admissions and document requests would otherwise be consistent with Rule 26.

Respectfully submitted,

**THE COMMUNITY OF JESUS, INC., ARTS EMPOWERING LIFE, INC., and PERFORMING ARTS BUILDING FOUNDATION, INC.**

By their attorneys,

*/s/ Jeffrey S. Robbins*

Jeffrey S. Robbins (Bar No. 421910)
Joseph D. Lipchitz (Bar No. 632637)
Bridgitte E. Mott (Bar No. 684770)
SAUL EWING LLP
131 Dartmouth Street, Suite 501
Boston, MA 02116
Telephone: (617) 723-3300
Facsimile: (857) 400-3375
Email: Jeffrey.Robbins@saul.com

Email: Joseph.Lipchitz@saul.com
Email: Bridgitte.Mott@saul.com

Dated: October 20, 2026

**REQUEST FOR HEARING OR STATUS CONFERENCE**

Pursuant to Local Rule 7.1(d), the Charitable Organizations request oral argument and/or a status conference based upon the Court's preference.

**LOCAL RULE 7.1(a)(2) CERTIFICATION**

I first emailed counsel for the parties on August 27, 2026 detailing our proposal. Counsel replied the next day rejecting it. Then late last week, I emailed them again, providing a copy of our Proposed Order, which they rejected by email. The parties had a telephonic conference on Tuesday, October 20, 2026, and were unable to resolve this dispute or narrow the areas of disagreement.

Dated: October 20, 2026

*/s/ Jeffrey S. Robbins*
Jeffrey S. Robbins

**CERTIFICATE OF SERVICE**

I, Jeffrey S. Robbins, hereby certify that this document that was filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 20, 2026.

*/s/ Jeffrey S. Robbins*
Jeffrey S. Robbins