UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

OLIVER ORTOLANI,

Plaintiff,

v.

COMMUNITY OF JESUS, INC., et al.,

Defendants.

Civil Nos. 25-12005-LTS
25-13453-LTS

COMMUNITY OF JESUS, INC., et al.,

Plaintiffs,

v.

DAVID ORTOLANI and
ELLEN ORTOLANI,

Defendants.

MEMORANDUM AND ORDER ON DISCOVERY MOTIONS (DOC. NOS. 58, 65, 66)

November 18, 2026

SOROKIN, J.

Oliver Ortolani sued the Community of Jesus, Inc., and related organizations (together, the "Charitable Organizations"), alleging that they subjected him to forced labor and trafficking as a child. The Charitable Organizations subsequently brought indemnity and contribution

claims against Oliver Ortolani's parents, Ellen and David Ortolani.[1] The two actions were consolidated, and now various discovery disputes are pending. None merit a hearing. For the reasons contained herein, the Charitable Organizations' motions for a discovery plan, Doc. No. 65,[2] and to compel Shawn DeLude to produce documents, Doc. No. 58, are DENIED. Ortolani's motion to partially quash various third-party subpoenas, Doc. No. 66, is ALLOWED in part and DENIED in part as described below.

## I. MOTION FOR A DISCOVERY PLAN (DOC. NO. 65)

The Charitable Organizations move for the entry of an "Order Governing Discovery Events." Doc. Nos. 65, 65-1. The proposed Order, Doc. No. 65-1, requests several specific rulings. The Court addresses each below.

First, the Charitable Organizations propose that they (as well as Ortolani and the Parents) be entitled to "a total of 140 hours within which to take direct deposition testimony . . . to be used as they see fit," including up to twenty-one hours for the deposition of each Ortolani. Doc. No. 65-1 ¶¶ 1–3. This request is DENIED. Allowing the Charitable Organizations to use 140 hours as counsel "see[s] fit," id. ¶ 2, grants counsel too much time and too much unsupervised discretion. Likewise, the Charitable Organizations have failed to persuasively justify their request for twenty-one hours of deposition time for Ortolani and each of the Parents. Three-day depositions are far outside the norm. See Fed. R. Civ. P. 30(d)(1) (providing that, by default, "a

[1] Ordinarily, the Court refers to litigants by their last names. Because Oliver, Ellen, and David Ortolani have the same last name, the Court refers to Oliver as "Ortolani" and refers to Ellen and David Ortolani together as "the Parents."

[2] Citations to "Doc. No. __" reference items filed on the electronic docket ("ECF") in civil action number 25-12005-LTS; pincites are to the page numbers in the ECF header or, where applicable, to the paragraph numbering within the document.

deposition is limited to 1 day of 7 hours”).[3] Finally, the Charitable Organizations’ request concerning deposition time is premature, as counsel has not yet reviewed all the paper discovery. Nevertheless, the Court rejects Ortolani’s contention, Doc. No. 81 at 6–7, that any request to exceed the presumptive limit must await the conclusion of a seven-hour deposition.

Second, the Charitable Organizations seek to require the Parents to appear in person in Boston, Massachusetts, for their depositions, even though the Parents live and work in Idaho, see Doc. No. 79 at 2.[4] This is unreasonable and contrary to standard practice. In the first action, the Parents are non-parties with relevant factual information. In that circumstance, Rule 45 provides for a deposition within 100 miles of where the Parents live or work. See Fed. R. Civ. P. 45(c)(1)(A). In the second action, the Charitable Organizations elected to sue the Parents in Massachusetts, as is their right (and made good practical sense), but out-of-state non-entity defendants are ordinarily deposed in the district of their residence or place of business. See Fed. Nat’l Mortg. Ass’n v. Springfield Gardens, L.P., No. 3:25-cv-30102-MGM, 2026 WL 2185160, at *2 (D. Mass. July 29, 2026) (noting “general presumption that defendants should be deposed at their residence or place of business, not at the plaintiff’s chosen forum” (citation modified)); see also Fortune Mgmt., Inc. v. Bly, 118 F.R.D. 21, 22 (D. Mass. 1987) (“[I]n general, the defendant in an action should be examined at his or her residence or place of business or employment.”). The Parents live and work in Idaho. Thus, the depositions shall proceed in person in Idaho absent agreement otherwise. The request to compel the Parents’ in-person appearance for depositions in Boston is DENIED.

---

[3] The Charitable Organizations are correct that “the 7-hour rule is not rigid.” Doc. No. 85 at 3. Nevertheless, the Court declines to grant triple the amount of time Rule 30 presumptively provides. That is plainly not warranted here.

[4] Although the Parents lived in Massachusetts during the events at issue, that is no longer the case.

Third, the Charitable Organizations propose limits on the number of interrogatories and requests for admission the various parties may serve. This request is DENIED WITHOUT PREJUDICE. The parties shall file a joint status report within seven days stating each party's position as to (1) whether the Court should now establish limits on the number of interrogatories, document requests, or requests for admissions, (2) what the limits should be, and (3) the reasons for their positions. In addressing the foregoing, each party (the Charitable Organizations, Ortolani, and the Parents) shall consume no more than four pages, double-spaced, excluding the caption and signature block.

Fourth, ordinarily Ortolani's deposition would proceed in person in the district in which he elected to sue. See Stamler v. JetBlue Airways Corp., No. 16-cv-11713-IT, 2017 WL 3131985, at *1 (D. Mass. Apr. 21, 2027) ("[A]s a general rule, a plaintiff should appear for her deposition in the forum district in which she has filed suit."). The default rule applies absent an agreement among the parties to the contrary or a court order. If Ortolani seeks to deviate from that rule without agreement from opposing counsel, he must file a motion with the Court justifying a departure from the default practice.

For the foregoing reasons, the Charitable Organizations' motion for an order providing a discovery plan, Doc. No. 65, is DENIED.

## II. MOTION TO COMPEL NON-PARTY SHAWN DELUDE TO PRODUCE DOCUMENTS (DOC. NO. 58)

The Charitable Organizations served a document subpoena upon non-party Shawn DeLude, Doc. No. 60-1, and now move to compel DeLude's compliance with the subpoena. Doc. No. 58. DeLude was raised as a member of the Community of Jesus and left the Community as a teenager, over thirty years before the events at issue in the consolidated actions. Doc. No. 63 at 3. He is now an outspoken critic of the Community and the founder of "Rock

Harbor Truth," an organization that advocates against the Community. Id. Both DeLude and Ortolani agree that DeLude has no firsthand knowledge of the events giving rise to the specific claims at issue here. Doc. No. 63 at 8; Doc. No. 64 at 2–3. Nowhere do the Charitable Organizations dispute these assertions or otherwise establish that DeLude has personal knowledge of the factual allegations giving rise to either lawsuit. To the contrary, DeLude and Ortolani assert that counsel for the Community of Jesus has conceded that DeLude lacks such knowledge. See Doc. No. 63 at 3–4 (citing 2025 news article in which counsel stated that DeLude "has had not even minimal firsthand knowledge of . . . the Community of Jesus for somewhere between 35 and 40 years" (quoting Doc. No. 63-2 at 4)); Doc. No. 64 at 2 (similar).

In the memoranda filed in support of the various discovery motions, each party provides commentary concerning, and characterizations of, the opposing side that are not directly related to the disputes at issue now. For example, DeLude quotes counsel for the Community as publicly stating that DeLude is a "hateful, truly bigoted" person whose website is a "geyser of poison aimed at a religious minority." Doc. No. 63 at 4 (quoting Doc. No. 63-2 at 4). For their part, Ortolani's counsel describe the Charitable Organizations as "using this litigation . . . as a tool to harass, intimidate, and seek revenge against various people." Doc. No. 67 at 13. And the Charitable Organizations contend that Ortolani's case "is in free-fall right out of the gate, in a state of collapse." Doc. No. 59 at 6. These characterizations and conclusions do not bear materially on whether the discovery sought ought to be ordered. The Court's adjudication of discovery motions will turn on the claims and defenses advanced in the case measured against the governing legal standards, not on exchanges of invective among the parties.

With that said, the Court turns to the pending motion concerning DeLude. The Charitable Organizations' subpoena requests the following:

> 1. All documents concerning . . . communications between [DeLude] and any of the following individuals . . . from January 1, 2024 to the present: Oliver Ortolani, Ellen Ortolani, David Ortolani, Jacob Ortolani, and/or Noah Ortolani.
>
> 2. All documents concerning . . . communications between [DeLude] and any lawyer, paralegal or employee associated with any law firm that has represented, or does now represent, Oliver Ortolani, Ellen Ortolani, or David Ortolani . . . from January 1, 2024 to the present.
>
> 3. All documents concerning . . . communications between [DeLude] and anyone from January 1, 2024 to the present that concern . . . Oliver Ortolani, Ellen Ortolani, David Ortolani, either or both of the Lawsuits, and/or the subject matter of either of the Lawsuits.

Doc. No. 60-1 at 11.

DeLude did not produce all the documents that were responsive to the plain terms of the subpoena. Instead, DeLude produced a portion of the requested documents and gave another portion to Ortolani's counsel, who had asserted work-product privilege over some of the documents. Doc. No. 59 at 11–15. Ortolani's counsel stated both that they viewed the requests as "overbroad," and that they would produce a privilege log for the documents they had received from DeLude but withheld from the Charitable Organizations. Id. DeLude's counsel likewise objected to the subpoena. Id. The Community thereafter filed the pending motion to compel, asking the Court to order Delude to produce all responsive documents he is purportedly withholding. Doc. No. 59 at 15.

DeLude opposes, contending that he produced all relevant communications between himself and the Ortolani family, other than those over which Ortolani's counsel asserted work-product protection. Doc. No. 63 at 2–3. DeLude declined to produce communications with individuals other than members of the Ortolani family, including communications within Rock Harbor Truth and communications with Ortolani's counsel relating to a possible attorney-client relationship. Id. According to DeLude, the subpoena infringes on his First Amendment rights,

requests irrelevant documents, and seeks to compel the production of attorney-client-privileged communications. Id. at 5–9.

In their reply, the Charitable Organizations contend that DeLude "misconstrued" the subpoena. Doc. No. 69 at 2. The Charitable Organizations now say they seek only:

> 1. Statements made by Oliver, Ellen and David Ortolani . . . and Noah or Jacob Ortolani . . . to . . . [DeLude];
>
> 2. Statements made by the Ortolanis to other individuals and then conveyed to . . . [DeLude]; and
>
> 3. Statements made by . . . [DeLude] to the Ortolanis' counsel about what the Ortolanis have stated.

Id. at 2 (emphasis omitted). Whether the Charitable Organizations advanced this position in the Local Rule 7.1 conference is unclear. Their original motion and memorandum are not expressly inconsistent with this position, though the papers likewise do not expressly state this position. See generally Doc. Nos. 58, 59. In any case, the Court is not adjudicating whether this was the Charitable Organizations' position at the Local Rule 7.1 conference or whether DeLude "misconstrued" what the Charitable Organizations communicated at the conference, Doc. No. 69 at 2. Ultimately, the parties were unable to reach agreement—a point on which the Court believes all counsel likely concur.

The Charitable Organizations' motion to compel, Doc. No. 58, is DENIED. By its plain terms, the subpoena, Doc. No. 60-1, is grossly overbroad, necessarily compels the production of documents that are not relevant to any party's claim or defense, and seeks discovery that is disproportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The consolidated actions focus on the specific allegations relating to trafficking, child labor, indemnification, and contribution identified in the two complaints. The Charitable Organizations do not contend that DeLude has firsthand knowledge of these allegations, and the requests as written encompass

documents that are likewise unrelated to the allegations. Given the subpoena's overbreadth, enforcement would unduly burden DeLude. "[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998); accord Cascade Yarns, Inc. v. Knitting Fever, Inc., 755 F.3d 55, 59 (1st Cir. 2014). The Court thus declines to compel DeLude's compliance. See Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41–42 (1st Cir. 2003) (affirming order quashing non-party subpoena because materials sought were not probative of specific allegations at issue and burden on non-party appeared significant).

Even reading the subpoena as narrowed according to the Charitable Organizations' reply, Doc. No. 69 at 2, the requests are overbroad. General "[s]tatements made by" DeLude "to the Ortolanis' counsel about what the Ortolanis have stated," id., are not admissible in evidence and are not obviously relevant to the parties' claims or defenses. Furthermore, efforts to gather such information would be unduly burdensome and oppressive to DeLude. Fed. R. Civ. P. 26(b)(1), 45(d)(3)(A)(iv). The request for "[s]tatements made by the Ortolanis to other individuals and then conveyed to" DeLude, Doc. No. 69 at 2 (emphasis omitted), suffers from the same issues. That leaves only "[s]tatements made by Oliver, Ellen and David Ortolani . . . and Noah or Jacob Ortolani" to DeLude. Id. (emphasis omitted). While this request might yield information that is admissible in evidence or relevant to the case, the burden of gathering such information would still likely be disproportional to the needs of the case. Indeed, at least a portion of the statements may very well be encompassed by discovery requests already directed to the parties in this case—Ortolani and the Parents. See Fed. R. Civ. P. 26(b)(2)(C)(i) (requiring court to restrict discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive").

Moreover, DeLude's counsel represents that DeLude already "produced all of his communications with members of the Ortolani family concerning these consolidated lawsuits and the facts of alleged trafficking and child labor underlying them." Doc. No. 63 at 2. Nothing further is required of DeLude.

Two more issues bear mention. First, DeLude provided some communications to Ortolani's counsel so that counsel could assert work-product protection. In light of the Court's rulings, the work-product issue is moot, except to the extent that any of the documents that DeLude turned over to Ortolani's counsel are communications that (1) are between DeLude and one or more members of the Ortolani family and (2) concern the consolidated lawsuits or the underlying alleged trafficking and child labor. Counsel for DeLude shall file a status report within seven days stating whether any of the documents withheld but turned over to Ortolani's counsel meet both of these criteria. Second, the Charitable Organizations complain that DeLude's production to the Charitable Organizations included messages that are fragmented and omitted attachments referenced in the text conversations. Doc. No. 59 at 14. In the status report, counsel for DeLude shall also state whether any of these message fragments and attachments meet the two criteria the Court has articulated in this paragraph.

## III. OMNIBUS MOTION TO PARTIALLY QUASH SUBPOENAS (DOC. NO. 66)

Ortolani moves to partially quash various third-party subpoenas served by the Charitable Organizations. Doc. No. 66. In opposition, the Charitable Organizations contend that Ortolani lacks standing to challenge some of the subpoenas. Doc. No. 80 at 11–12, 21. Even if they are correct in that regard—a question the Court need not decide—the Court possesses inherent authority to control the discovery process, including to regulate the use of subpoenas. See Fed. R. Civ. P. 26(b)(2)(C)(iii) (requiring court to impose limits "[o]n motion or on its own" when discovery sought is outside scope permitted by Rule 26(b)(1)); Fed. R. Civ. P. 45(d)(1)

(requiring court to enforce party's duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena"). Here, the Court exercises its authority pursuant to the Federal Rules of Civil Procedure. See generally Fed. R. Civ. P. 1, 16, 26, 45. As stated below, Ortolani's motion to quash, Doc. No. 66, is ALLOWED in part and DENIED in part.

A. Subpoenas on Noah Ortolani and Mathew Wierzbinski

The Charitable Organizations served a subpoena on Noah Ortolani, Ortolani's brother. Doc. No. 68-1. Noah Ortolani is a non-party, but according to the complaint, he has personal knowledge of some facts relevant to the allegations in the consolidated actions. See Doc. No. 1 ¶¶ 81–84. The subpoena requests:

> 1. All communications between [Noah Ortolani] and any of the following individuals (or anyone acting or purporting to act on their behalf) from January 1, 2025 to the present concerning, directly or indirectly, in whole or in part, the Community of Jesus, [the other Charitable Organizations], and/or the Performing Arts Center: (1) Oliver Ortolani; (2) Ellen Ortolani; (3) David Ortolani or (4) Jacob Ortolani, regardless of who initiated those communications.
>
> 2. All communications with anyone concerning or regarding either or both of the Lawsuits and/or the subject matter of either or both of the Lawsuit [sic], regardless of who initiated those communications.

Doc. No. 68-1 at 15.

The first request is QUASHED in all respects EXCEPT as to communications that (1) are between Oliver, Ellen, or David Ortolani on the one side and Noah Ortolani on the other, and (2) concern the consolidated lawsuits or the underlying allegations. The second request is QUASHED entirely. The proper scope of discovery is information "that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The requests encompass information beyond the scope of the claims, defenses, and underlying allegations at issue, as well as communications exchanged solely between non-parties (e.g.,

between Noah Ortolani and Jacob Ortolani). To the extent the Court has quashed them, both requests are overbroad and disproportional to the needs of the case.

The Charitable Organizations served a virtually identical subpoena on Matthew Wierzbinski, Ortolani's uncle. See Doc. No. 68-9 at 15. Unlike Noah Ortolani, Wierzbinski has no personal knowledge of any facts relevant here. See Doc. No. 60 at 9 (Wierzbinski stating in text message that he "had no idea" about the allegations). Thus, the documents requested are not demonstrably relevant, and the burden or expense caused to Wierzbinski, a non-party, does not outweigh any likely benefit. Fed. R. Civ. P. 26(b)(1). This subpoena is QUASHED. In the absence of a showing that a party made particular statements to Wierzbinski regarding the factual allegations at issue in the consolidated actions, the discovery requests are unduly burdensome for a non-party such as Wierzbinski. See Cascade Yarns, 755 F.3d at 59 (affirming district court's ruling that burden on non-party imposed by subpoena outweighed party's interest in enforcement).

B. Medical Provider Subpoenas

The complaint alleges that Ortolani was subjected to forced labor beginning in 2019, Doc. No. 1 ¶ 64, and that, as a result, he "suffered from constant joint and back pain" and psychological injuries such as post-traumatic stress disorder. Id. ¶¶ 100, 103–105, 109. With these allegations, Ortolani has put his physical and mental condition in issue. The Charitable Organizations are entitled to obtain appropriate medical records from Ortolani's medical providers. The foregoing is not a basis, however, to peruse all of his medical records since birth. Such expansive production is not demonstrably proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The Court finds that a date two years prior to the first allegations of misconduct is a reasonable starting point, and the Charitable Organizations may therefore subpoena

Ortolani's healthcare providers for records of his treatment dated from January 1, 2017, to the present.[5]

The subpoenas are QUASHED to the extent they seek the production of documents from prior to 2017. The Charitable Organizations shall (1) notify the recipients of the medical provider subpoenas of this Court's Order within seven days; and (2) return all productions in response to the subpoenas (whether produced prior to notice of this Order or afterward) that purport to include documents beyond the time period the Court has identified. Nothing in this Order prevents the Charitable Organizations from moving for leave to request documents predating 2017, provided they support their request specific, articulable facts justifying such an expansion.[6]

C. School Records Subpoena

The complaint alleges that the defendants violated various trafficking and child labor laws by forcing Ortolani to perform labor during his teen years. See Doc. No. 1 ¶¶ 112–160. The Charitable Organizations contend that any labor Ortolani performed was part of "a formally approved and authorized homeschooling program approved by [the Nauset Regional School District, or] NRSD." Doc. No. 80 at 2 (emphasis omitted). The parties dispute whether the

---

[5] Ortoloni objects not only to the temporal scope of the records sought, but also to the substantive scope, i.e., the request for records relating to "treatment of any kind whatsoever." Doc. No. 67 at 5, 9–10. He suggests that he would authorize the production of records related only to the specific treatments and damages alleged in the complaint. Id. at 9. Nevertheless, he proposes no alternative, narrower language for the subpoena. Nor is any such language plainly evident from the complaint or the motion papers. In the absence of a discernible practical alternative, and given the nature of the alleged injuries, the Court declines to limit the subject matter of the records sought.

[6] The Charitable Organizations have filed under seal medical records from at least 2013, if not earlier. See, e.g., Doc. No. 80-10 at 2. While these documents suggest that some records prior to 2017 may be relevant to the case, the Charitable Organizations have not established the need to compel the production of such documents from the healthcare providers—especially not all such records dating back to Ortolani's birth.

school district understood what was allegedly occurring in the Community. See Doc. No. 67 at 13; Doc. No. 80 at 10–11. To gather information on this topic, the Charitable Organizations served a document subpoena on the school district. Doc. No. 68-11. The subpoena makes four document requests. See Doc. No. 68-11 at 15–16. By and large, the requests are reasonable, typical, and appropriate. The documents sought appear to be relevant to (1) Ortolani's allegation that the Charitable Organizations "attempt[ed] to pass off the children's . . . labor as education," Doc. No. 1 at 18; (2) some of the Charitable Organizations' defenses to Ortolani's claims, see, e.g., Doc. No. 42 at 44 (asserting defense that any damages suffered by Ortolani were caused by individuals other than the Charitable Organizations), and (3) the Charitable Organizations' claims against the Parents for contribution and indemnification.

The Court narrows only the third request to focus more precisely on the issues giving rise to the subpoena. That request seeks:

> All documents concerning . . . communications between Julie Kobold, Nauset Regional School District, and/or Nauset Public Schools, on one hand, and Ellen Ortolani and/or David Ortolani, on the other hand, from January 1, 2018 through December 31, 2022.

Doc. No. 68-11 at 16. As written, this request compels the production of information that is irrelevant to the claims at issue and thus outside the scope of discovery. Fed. R. Civ. P. 26(b)(1). The request is MODIFIED as follows: The Court inserts the words "concerning Oliver Ortolani or a home-education or home-schooling program" after the word "communications" and before the word "between." Within seven days, counsel for the Charitable Organizations shall communicate the narrowing of the subpoena to the Nauset Regional School District and provide the district with a copy of this decision.

## IV. CONCLUSION AND ORDERS

For the foregoing reasons, the Charitable Organizations' motion for an order providing a discovery plan, Doc. No. 65, is DENIED; the Charitable Organizations' motion to compel, Doc. No. 58, is DENIED; and Ortolani's motion to quash, Doc. No. 66, is ALLOWED in part and DENIED in part as described herein. In addition, the Court makes the following further Orders.

In just over three months since the Rule 16 conference, the parties have filed three discovery motions, a joint request for a status conference to address disputes over the terms of a protective order, an emergency motion for a status conference, and two replies by a movant in support of a single motion. See Doc. Nos. 58, 65–66, 69–72. In addition, at least one of these motions features quarrels over whether the parties conferred as to each aspect of the discovery disputes, see Doc. No. 64 at 13–14, Doc. No. 70 at 5–6, as well as whether the parties to the conferral actually understood the position(s) of the other parties to the conferral, see Doc. No. 69 at 2. Given the foregoing, and in an effort to efficiently and fairly manage the consolidated actions, the Court enters the following Case Management Orders pursuant to the Federal Rules of Civil Procedure:

1. **Replies.** All replies are limited to five pages and are due seven days after the filing of the opposition(s) to the motion. The party that filed the motion may file only one reply in support of its motion, no matter how many oppositions or responses are filed. If the moving party believes in good faith that it requires more than five pages to reply, it may seek permission, prior to the deadline for filing the reply, for more time and/or more pages. The Court does not anticipate permitting multiple replies by the same party in support of one motion.
2. **Surreplies.** Surreplies are not ordinarily permitted. No party may file a surreply absent court permission.

3. **Discovery motions.** Given the briefing on the various motions, the Court concludes some guidance would assist counsel in advancing the positions of their clients and parsimoniously expending client and public resources. Discovery motions should focus narrowly on (a) what was requested, (b) what was produced, (c) what more is sought, and (d) why more need or need not be produced. In that respect, DeLude's opposition to the Charitable Organizations' motion to compel, Doc. No. 63, was exceptionally helpful. Gratuitous commentary outside the scope of this narrow focus should be omitted. Litigation over whether the parties complied with the foregoing sentence is unlikely to be helpful.

4. **Pre-Discovery Motion Requirements.** Before any party to the lawsuit may file a discovery motion, the party wishing to make the filing must first confer with opposing counsel and then file a status report requesting leave to file the motion. The status report shall state (a) the request(s) that are the subject of the proposed motion, (b) the additional discovery sought or the discovery to be quashed, (c) the reasons for the filing party's position, and (d) the reasons on the merits (supplied by the other side) that the Court should not authorize the additional discovery or should not quash the challenged discovery. Each party may also briefly address why full-blown motion practice would or would not assist in the resolution of the discovery dispute. The parties shall omit attacks on or characterizations of the other side (e.g., a "pattern of harassment," Doc. No. 64 at 6, or "egregious stonewalling," Doc. No. 59 at 11). Such commentary is generally unpersuasive, largely unhelpful, and sometimes borderline frivolous. The reports and any permitted discovery motions are not the proper fora to argue that opposing counsel's case is "dissolving," Doc. No. 80 at 2 (an

assertion not established to date); to contend that the litigation is "a tool to harass, intimidate, and seek revenge against various people," Doc. No. 67 at 13 (likewise, an assertion not established to date); or to otherwise argue generally the merits of the claims and defenses asserted in this case. After the filing of the status report, the Court will either resolve the discovery dispute based on the report, perhaps with the aid of a hearing, or it will order the parties to file a motion, opposition, and reply.

5. **Third-Party Subpoenas.** By November 25, 2026, each party shall file a list of every third-party subpoena it has served as of November 24, 2026. Each party shall also identify the subpoenas that it issued that the party believes are called into question in whole or in part by the rulings herein. The Court is contemplating requiring advance permission for the service of third-party subpoenas. No person or entity that has received a third-party subpoena shall receive another subpoena from that party absent prior permission from the Court, unless the subsequent subpoena merely narrows the original subpoena. Notifying a party that its obligations are narrower in light of the rulings herein does not constitute issuing a subsequent subpoena requiring advance permission from the Court.

6. **Confidentiality.** All medical and school records produced by any person or entity since the filing of this lawsuit shall be deemed and treated by the parties as confidential pending the imposition of a protective order.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge